**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                **v.**                            **5:17-CR-228
                                                      (FJS)**

**CHARLES TAN,**

                           **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>Federal Building & U.S. Courthouse<br>15 Henry Street<br>Binghamton, New York 13901<br>Attorneys for the United States | **MIROSLAV LOVRIC, AUSA** |
| **NOBLES & DECAROLIS**<br>45 Exchange Boulevard, Suite 275<br>Rochester, New York 14614<br>Attorneys for Defendant | **BRIAN C. DECAROLIS, ESQ.**<br>**JAMIE L. NOBLES, ESQ.** |

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Defendant is charged in a three-count Indictment. *See* Dkt. No. 1. Specifically, the Government charges that, on or about February 5, 2015, in Cortland County, Defendant

> with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, and with knowledge and reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year was to be committed therewith, received a firearm and ammunition in interstate commerce, that is [Defendant] received a Remington Model 870 12 Gauge Shotgun with serial number RS50700V, Winchester 12 Gauge Shotgun ammunition, and Federal 12 Gauge Shotgun ammunition with intent to commit, among other felonies, Murder in the Second

>Degree, Manslaughter in the First Degree, and Manslaughter in the Second Degree, in violation of New York Penal Law Sections 125.25(1), 125.20(1), and 125.15(1), respectively, and willfully caused another to commit such acts, in violation of Title 18, United States Code, Sections 924(b) and 2(b).

*See* Dkt. No. 1 at Count 1.

In addition, in Count 2, the Government charged that, on or about February 5, 2015, in Cortland County, Defendant,

>in connection with the acquisition of a firearm from a licensed dealer of firearms, aided, abetted, counseled, commanded, induced, procured, and willfully caused another to knowingly make a false and fictitious written statement to a dealer of firearms intended and likely to deceive such dealer with respect to a fact material to the lawfulness of the sale under the provisions of Chapter 44 of Title 18 of the United States Code, that is the identity of the actual purchaser of a Remington Model 870 12 Gauge Shotgun with serial number RS50700V from a Walmart store in Cortland, New York, in violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), and 2(a) & (b).

*See id.* at Count 2.

Finally, in Count 3, the Government charged that, on or about February 5, 2015, in Cortland County, Defendant

>aided, abetted, counseled, commanded, induced, procured, and willfully caused another to knowingly make a false statement and representation with respect to information required by Chapter 44 of Title 18 of the United States Code to be kept in the records of a person licensed under that chapter, that is the identity of the actual purchaser of a Remington Model 870 12 Gauge Shotgun with serial number RS50700V from a Walmart store in Cortland, New York, in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2(a) and (b).

*See id.* at Count 3.[1]

Pending before the Court is Defendant's omnibus motion, in which he seeks the following relief: (1) inspection of jury lists; (2) suppression of any and all of his alleged statements to law enforcement or, in the alternative, an evidentiary hearing regarding any such statements; (3) a hearing pursuant to *Bourjaily v. United States*, 483 U.S. 171 (1987); (4) disclosure of the identity of the Government's informants; (5) private *voir dire* of jurors; (6) discovery/inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure; (7) statement pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure; (8) disclosure of Rule 404(b) evidence; (9) disclosure of Rule 608 and Rule 609 evidence; (10) release of *Brady* material; (11) production of Jencks Act material; and (12) permission to bring further motions. *See* Dkt. No. 21 at 2.[2]

## II. DISCUSSION

**A.    Defendant's request for inspection of jury lists**

Defendant asserts that he "has a constitutional and statutory right to a jury chosen without discrimination from a fair cross-section of the community." *See* Dkt. No. 21 at 14 (citing *Glasser v. U.S.*, 315 U.S. 60 (1942); 28 U.S.C. § 1861). Furthermore, Defendant contends that "[t]he provisions of the Jury Selection and Service Act of 1968 allow [a] defendant an unqualified right to inspect jury lists during the preparation of a motion to challenge compliance with the grand jury selection procedure." *See id.* (citing *Test v. U.S.*, 420 U.S. 28 (1975); 28 U.S.C. § 1867(f)).

---

[1] In addition to these three counts, the Indictment contains a forfeiture allegation. *See* Dkt. No. 1 at Forfeiture Allegation.

[2] All of the Court's references to page numbers are to the page numbers that the Court's electronic filing system ("CM/ECF") generated.

Therefore, pursuant to 28 U.S.C. § 1861, "Defendant requests [that] the Court . . . order the [Jury Administrator] to allow [his counsel] or his [counsel's] designated agent(s) to inspect, reproduce, and copy any and all records or papers used in the selection of the grand jury that indicted . . . [D]efendant." *See id.* Defendant argues that "[i]nspection of these records will permit [him] to determine whether the jury panel was selected, and treated, in accordance with the law." *See id.* Finally, "Defendant requests similar access to the records used, or to be used, in the selection of the petit jury in this case," if the Court schedules the case for trial. *See id.*

The Government objects to this request, arguing that "Defendant [has] fail[ed] to articulate with any specificity the reasons for and justification for this extraordinary request." *See* Dkt. No. 25 at 10.

Pursuant to 28 U.S.C. § 1861, "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Furthermore, 28 U.S.C. § 1867(f) provides, in pertinent part, that

> [t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion ["on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury"] . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. . . .

28 U.S.C. § 1867(f).

In *Test v. United States*, 420 U.S. 28 (1975) (*per curiam*), the Supreme Court held that § 1867(f) made "clear that a litigant has essentially an unqualified right to inspect jury lists." *Id.* at

30 (footnotes omitted). The Court explained that, "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.* Thus, the Court concluded that "an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.'" *Id.* (quoting 28 U.S.C. § 1861).

Although the right to inspect jury lists may be "unqualified," courts have concluded that the right is not "limitless." *See, e.g., United States v. Bundy*, No. 2:16-cr-00046-GMN-PAL, 2017 WL 119747, *2 (D. Nev. Jan. 11, 2017) (finding that the "'right to discovery by the Act and *Test* is not limitless'" (quoting *United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006)). As the court in *Bundy* explained, "'Defendants are entitled only to discovery "necessary" to prepare a motion alleging substantial noncompliance with the Act's jury selection procedures.'" *Id.* (quoting [*Diaz*, 236 F.R.D.] at 482-83 (finding that names and other personal information are not ordinarily subject to disclosure to criminal defendants because disclosure of jurors' personal and private information cannot assist a defendant in the preparation of his motion and is not necessary under the Act)). The *Bundy* court further noted that, although "[t]he Ninth Circuit ha[d] not addressed what information a party [wa]s entitled to receive in a request for information under the Act[,] . . . the Sixth Circuit ha[d] held that a defendant's unqualified right to inspection was 'satisfied by disclosure of the master lists and the relevant demographic data about the general pool from which the specific grand jurors were selected.'" *Id.* (quoting *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984)).

Finding that the defendant had not specified what he wanted and had simply asked for all records of grand jury selection, the *Bundy* court concluded that his request was "facially overbroad

-5-

and [that it] present[ed] logistical and security problems." *Id.* Therefore, the court granted his motion "to the extent the Jury Administrator SHALL MAIL a copy of the District of Nevada's plan for random jury selection, and most recent Report on Operation of the Jury Selection Plan, which were prepared pursuant to 28 U.S.C. § 1863 to [the defendant]." *Id.*

Likewise, when faced with a similar request, the court in *United States v. Sorensen*, No. 2:99-CR-441 TS, 2007 WL 2273672 (D. Utah Aug. 7, 2007), provided the defendant with "a copy of the Amended Plan for the Random Selection of Grand and Petit Jurors adopted by the United States District Court for the District of Utah[.]" *Id.* at *1; *see also United States v. Frye*, Criminal Action No. 04-331, 2005 WL 8148160, *1 (E.D. La. Dec. 5, 2005) (finding that the defendant's request for an order "instruct[ing] the clerk of the court to produce any statistics that exist concerning the racial and ethnic makeup of jury venires for criminal trials in the Eastern District of Louisiana for the five-year period before September 1, 2005 . . . ha[d] been made in order to evaluate and prepare a potential challenge to jury selection procedures" and, therefore, ordering "that defendant be given the opportunity to inspect such records and statistics as the clerk's office currently possesses concerning the historical racial and ethnic makeup of the pool of potential jurors in the Eastern District of Louisiana").

As the Government correctly points out, in this case, Defendant has not indicated why he believes that the selection of the grand jury panel did not comply with the law. Rather, he asserts only that "[i]nspection of these records will permit [him] to determine whether the jury panel was selected, and treated, in accordance with the law." *See* Dkt. No. 21 at 14. Despite the non-specific nature of Defendant's request, the Court **grants** his request to the extent that the Court will direct the Jury Administrator to allow Defendant's counsel or his counsel's designated agent(s) to inspect,

reproduce, and copy the master lists and relevant demographic data about the general pool from which the specific grand jurors were selected during regular business hours. In addition, the Court will direct the Clerk of the Court to provide Defendant's counsel with a copy of this District's plan "for Random Selection of Grand and Petit Jurors[.]" *See* L.R. 47.1; www.nynd.uscourts.gov. With regard to Defendant's request for similar information regarding the selection of a petit jury, should the case proceed to trial, the Court **reserves** decision on that part of his request at this time. Finally, the Court **denies** Defendant's request for inspection of jury lists in all other respects.

**B.     Defendant's request to suppress any and all of his alleged statements to law enforcement or, alternatively, an evidentiary hearing regarding any such statements**

Defendant asserts that, although the Government has not yet filed a Rule 12(b)(4) notice, he believes there may be a statement that the Government intends to submit as evidence as his post-arrest statement. *See* Dkt. No. 21 at 15-16. Defendant seeks "an Order suppressing the use at trial of any and all statements attributed to [him]." *See id.* at 16. In support of his request, Defendant argues that law enforcement did "not advise [him] of his rights at any time"; "he did not make a knowing, intelligent, and voluntary waiver of his rights prior to the time he was questioned"; and his "right to counsel and other constitutional rights have been violated." *See id.*  Therefore, he contends that the Court should grant his request to suppress any statement he allegedly made; or, in the alternative, the Court should hold a hearing "to determine the facts surrounding the taking of [those] statements." *See id.*

In response, the Government states that, "[o]n October 3, 2017, [it] provided written notice to [Defendant] that [he] had made statements to law enforcement and that the [G]overnment

intended to introduce [those] statements at trial." *See* Dkt. No. 25 at 12 (citing Docket No. 14, Discovery Disclosure Statement, at page 2). Furthermore, the Government asserts that it has provided Defendant with discovery materials, among which are reports and documents that contain in sum and substance the statement that Defendant made to law enforcement on February 9, 2015, at Defendant's parents' home in Pittsford, New York. *See id.* (citing Docket No. 14, Discovery Disclosure Statement, at page 2). Finally, although the Government contends that Defendant's request to suppress his statements is without merit and that, therefore, the Court should deny it, *see id.*, the Government consents to the Court holding a pre-trial hearing, where the Government will produce evidence and witnesses to demonstrate that the police lawfully obtained Defendant's statements to them, *see id.* at 13.

    A defendant who requests a suppression hearing has the burden of showing that disputed issues of material fact exist. *See United States v. Rush*, 352 F. Supp. 2d 383, 386 (E.D.N.Y. 2005) (citation omitted). To create an issue of fact, a defendant must submit a sworn affidavit from someone who has personal knowledge of the underlying facts. *See United States v. Dewar*, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007). If a defendant's "'moving papers [do] not state sufficient facts which, if proven, would . . . require the granting of the relief requested[,]'" the court is not required to hold an evidentiary hearing. *Rush*, 352 F. Supp. 2d at 386 (quotation omitted). Nor is a court required to hold such a hearing if the "'defendant's statements are general, conclusory or based on conjecture.'" *Id.* (quotation omitted).

    In this case, Defendant did not submit an affidavit based on personal knowledge to create an issue of fact regarding his claims that law enforcement did not advise him of his rights at any time; that he did not make a knowing, intelligent, and voluntary waiver of his rights prior to the time he

was questioned; and that his right to counsel and other constitutional rights were violated. In fact, Defendant did not even state the nature or contents of any of the statements he allegedly made to law enforcement, which he now seeks to suppress. Nor did he describe the circumstances under which he had provided those alleged statements to law enforcement, *e.g.*, how or why the environment to which law enforcement subjected him when they questioned him was in any way coercive and intimidating or whether, at the time law enforcement questioned him, he was under arrest or in custody.

Nonetheless, despite Defendant's failure to meet his burden of proof, because the Government consents to the Court holding an evidentiary hearing, the Court **grants** Defendant's request for such a hearing. Furthermore, due to the Court's schedule, the Court will refer this matter to Magistrate Judge Baxter to conduct said evidentiary hearing and, thereafter, "submit . . . [his] proposed findings of fact and recommendations," 28 U.S.C. § 636(b)(1)(B), to this Court for its review.

**C.     Defendant's request for a hearing pursuant to *Bourjaily v. United States*, 483 U.S. 171 (1987)**

Defendant asserts that, upon information and belief, the Government may seek to introduce at trial statements of an alleged co-conspirator pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See* Dkt. No. 21 at 34. Therefore, pursuant to *Bourjaily v. United States*, 483 U.S. 171 (1987), Defendant "request[s] that the Court hold a pretrial conspiracy hearing to assess the foundation for the introduction of any statements [that the alleged co-conspirators made,] which the Government will seek to introduce against [him] at trial." *See id.*

The Government objects to this request, arguing that no such hearing is required in this case.

-9-

*See* Dkt. No. 25 at 17.  The Government presumes that Defendant is referring to W1 and the conversations that W1 had with Defendant "regarding discussions leading up to the actual purchase of the shotgun in this case by W1 for . . . and on behalf of [D]efendant . . . ."  *See id.*  The Government acknowledges that it will call W1 as a "witness to testify about in person conversations between [him and Defendant] regarding the purchase of the shotgun."  *See id.* at 17-18.  Furthermore, the Government asserts that W1 will testify about the conversations that he personally had with Defendant and will be subject to Defendant's cross-examination of him about those conversations.  *See id.* at 18.  The Government argues that all statements that Defendant made "directly to W1 are admissible at trial against [D]efendant . . . as admissions by a defendant and are therefore not hearsay pursuant to the [F]ederal [R]ules of [E]vidence."  *See id.*

Finally, the Government argues that this case does not present a scenario in which the Government calls some third witness co-conspirator "to testify about conversations that occurred between conspirators W1 and [D]efendant . . . but which were relayed to the third witness conspirator in the course of an overall conspiracy [among] all three persons."  *See id.*  Rather, "W1, who will testify, had direct conversations with [D]efendant[; and, therefore, a] co-conspirator hearing has no application in this case[.]"  *See id.*

> In *Bourjaily v. United States*, 483 U.S. 171 (1987), the Supreme Court
>
>> granted certiorari to answer three questions regarding the admission of statements under Rule 801(d)(2)(E): (1) whether the court must determine by independent evidence that the conspiracy existed and that the defendant and the declarant were members of this conspiracy; (2) the quantum of proof on which such determinations must be based; and (3) whether a court must in each case examine the circumstances of such a statement to determine its reliability.

*Id.* at 173 (citation omitted).

In *Bourjaily*, an informant, Clarence Greathouse, who was working for the FBI, arranged to sell a kilogram of cocaine to Angelo Lonardo. Lonardo, in turn, agreed that he would find individuals to distribute the drug. When the sale became imminent, Lonardo stated in a tape-recorded telephone conversation that he had a "gentleman friend" who had some questions to ask about the cocaine. In a subsequent telephone call, Greathouse spoke to the "friend" about the quality of the drug and the price. Greathouse then spoke again with Lonardo, and the two arranged the details of the purchase. They agreed that the sale would take place in a designated hotel parking lot, and Lonardo would transfer the drug from Greathouse's car to the "friend," who would be waiting in the parking lot in his own car. Greathouse proceeded with the transaction as planned, and the FBI agents arrested Lonardo and Bourjaily immediately after Lonardo placed a kilogram of cocaine into Bourjaily's car in the hotel parking lot.

The government charged Bourjaily with conspiring to distribute cocaine and possession of cocaine with intent to distribute. *See id.* at 174. The government introduced, over Bourjaily's objection, Lonardo's telephone statements regarding the participation of the "friend" in the transaction. *See id.* The Court noted that

> [t]he District Court [had] found that, considering the events in the parking lot and Lonardo's statements over the telephone, the Government had established by a preponderance of the evidence that a conspiracy involving Lonardo and [Bourjaily] existed and that Lonardo's statements over the telephone had been made in the course of and in furtherance of the conspiracy.

*Id.* (citation omitted).

Thus, the district court "held that Lonardo's out-of-court statements satisfied Rule 801(d)(2)(E) and were not hearsay." *Id.*

As the Government correctly argues, *Bourjaily* is not applicable to the facts of this case. In

-11-

*Bourjaily,* the statements at issue were part of a telephone conversation between two people, neither of whom was the defendant against whom the government sought to introduce the statement, on the theory that the telephone statements were made in the course of and in furtherance of a conspiracy. Rather, in this case, the Government seeks to introduce statements through W1 that were part of the conversations that W1 personally had with Defendant. In other words, there is no third party involved and, therefore, no need for a pretrial conspiracy hearing.

Accordingly, for the above-stated reasons, the Court **denies** Defendant's request for a *Bourjaily* hearing.

### D.    Defendant's other requests

With the exception of Defendant's request to file further motions, which the Court **grants** to the extent that any such motions become necessary, the Court **denies** the remainder of Defendant's requests, none of which require much discussion, for the reasons stated below.

***1. Defendant's request that the Government disclose the identity of its informants to him***

The Court **denies** this request in light of the Government's assurances to the Court that (1) it "is not aware of any informants in this case"; (2) that, if Defendant is referring to W1, Defendant already knows his identity; and (3) that it will disclose to Defendant "[a]ll *Giglio* materials, including any criminal history or benefits conferred upon W1 and as it relates to W1, . . . well [before] trial pursuant to the Court's criminal pre-trial order." *See* Dkt. No. 25 at 10.

*2. Defendant's request for private voir dire of jurors*

The Court **denies** this request. The Court's practice in every case is to ask members of the jury panel personal and sensitive questions at sidebar, outside the hearing of other members of the panel. Therefore, "private" *voir dire* of individual jurors is unnecessary.

*3. Defendant's request for discovery and inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure*

The Court **denies** this request in light of the Government's assurances to the Court that it has provided Defendant with all Rule 16 materials in its possession and will continue to do so and that it recognizes its continuing duty to provide Rule 16 materials to Defendant. *See* Dkt. No. 25 at 15.

*4. Defendant's request that the Government provide him with a statement pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure*

The Court **denies** this request in light of the Government's assurances to the Court that it has already provided Defendant with notice that he made statements to the first officers on the scene on February 9, 2015; that it has provided Defendant with the police reports that summarize the oral statements that he made to police on February 9, 2015; and that it has provided Defendant with reports and records itemizing and describing all of the tangible items/evidence that the police collected, which are available for Defendant to view and inspect at ATF or the Monroe County Sheriff's Office. *See* Dkt. No. 25 at 15.

### 5. Defendant's request that the Government disclose evidence under Rule 404(b) of the Federal Rules of Evidence

The Court **denies** this request in light of the Government's assurances to the Court that it is not aware of any Rule 404(b) material or evidence at this time and that it recognizes its continuing duty to disclose any Rule 404(b) materials that come to its attention and which it intends to offer at trial. *See* Dkt. No. 25 at 16.

### 6. Defendant's request that the Government disclose material pursuant to Rules 608 and 609 of the Federal Rules of Evidence

The Court **denies** this request in light of the Government's assurances to the Court that it is not aware of any Rule 608 or Rule 609 information or evidence at this time related either to any defense witnesses or to Defendant. *See* Dkt. No. 25 at 16.

### 7. Defendant's request for Brady material

The Court **denies** this request in light of the Government's assurances to the Court that it is not aware of any *Brady* material at this time and that it recognizes that its duty to disclose *Brady* material is ongoing and that it will disclose any *Giglio* material related to any witness who it calls at trial prior to trial if such material exists. *See* Dkt. No. 25 at 16-17.

### 8. Defendant's request for Jencks material

The Court **denies** this request in light of the Government's assurances to the Court that it has already provided Defendant with considerable Jencks material and that it voluntarily has and will continue to provide Defendant with early Jencks/3500 materials. *See* Dkt. No. 25 at 17.

### III. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's omnibus motion, *see* Dkt. No. 21, is **GRANTED in part, DENIED in part**, and **RESERVED** in part; and the Court further

**ORDERS** that Defendant's request for inspection of jury lists is **GRANTED in part, DENIED in part,** and **RESERVED** in part.  The Court directs the Jury Administrator to allow Defendant's counsel or his counsel's designated agent(s) to inspect, reproduce, and copy the master lists and relevant demographic data about the general pool from which the specific grand jurors were selected during regular business hours; and the Court further directs the Clerk of the Court to provide Defendant's counsel with a copy of this District's plan "for Random Selection of Grand and Petit Jurors."  *See* L.R. 47.1; www.nynd.uscourts.gov.  With regard to Defendant's request for similar information regarding the selection of a petit jury, should the case proceed to trial, the Court **reserves** decision on that part of his request at this time.  Finally, the Court **denies** Defendant's request for the inspection of jury lists in all other respects; and the Court further

**ORDERS** that Defendant's request to suppress any and all of the statements that he allegedly made to law enforcement or, in the alternative, an evidentiary hearing regarding such statements is **GRANTED insofar as** the Court refers this matter to Magistrate Judge Baxter to conduct an evidentiary hearing and, thereafter, to "submit . . . [his] proposed findings of fact and recommendations," 28 U.S.C. § 636(b)(1)(B), to this Court for its review; and the Court further

**ORDERS** that Defendant's request for a hearing pursuant to *Bourjaily v. United States*, 483 U.S. 171 (1987), is **DENIED**; and the Court further

**ORDERS** that Defendant's request that the Government disclose to him the identity of its informants is **DENIED**; and the Court further

**ORDERS** that Defendant's request for private *voir dire* of jurors is **DENIED**; and the Court further

**ORDERS** that Defendant's request for discovery/inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure is **DENIED**; and the Court further

**ORDERS** that Defendant's request that the Government provide him with a statement pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure is **DENIED**; and the Court further

**ORDERS** that Defendant's request that the Government disclose evidence under Rule 404(b) of the Federal Rules of Evidence is **DENIED**; and the Court further

**ORDERS** that Defendant's request that the Government disclose material pursuant to Rule 608 and Rule 609 of the Federal Rules of Evidence is **DENIED**; and the Court further

**ORDERS** that Defendant's request for *Brady* material is **DENIED**; and the Court further

**ORDERS** that Defendant's request for Jencks material is **DENIED**; and the Court further

**ORDERS** that Defendant's request for permission to bring further motions is **GRANTED** insofar as such motions become necessary.

**IT IS SO ORDERED.**

Dated: March 5, 2018
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge