**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

            **v.**                                  **5:17-CR-228**
                                                      **(FJS)**

**CHARLES TAN,**

                    **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James Hanley U.S. Courthouse<br>& Federal Building<br>100 South Clinton Street<br>P.O. Box 7198<br>Syracuse, New York 13061-7198<br>Attorneys for the United States | **LISA M. FLETCHER, AUSA** |
| **NOBLES & DECAROLIS**<br>45 Exchange Boulevard, Suite 275<br>Rochester, New York 14614<br>Attorneys for Defendant | **BRIAN C. DECAROLIS, ESQ.**<br>**JAMES L. NOBLES, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 7, 2017, Defendant filed omnibus motions, one of which was a motion to suppress certain statements he made to law enforcement officers who, he alleged, violated his *Miranda* rights. *See* Dkt. No. 21 at 15-16. Although the Government opposed that motion, it agreed to a suppression hearing. *See* Dkt. No. 25 at 12-13.

In a Memorandum-Decision and Order dated March 5, 2018, this Court directed Magistrate Judge Baxter, pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing and,

thereafter, to submit proposed findings of fact and recommendations for this Court's review. *See* Dkt. No. 26 at 15. On March 28, 2018, Magistrate Judge Baxter conducted a suppression hearing, after which the parties filed post-hearing submissions. *See* Dkt. No. 38, Transcript of March 28, 2018 Suppression Hearing ("Tr."); Dkt. Nos. 36-37.

In a Report-Recommendation dated April 30, 2018, Magistrate Judge Baxter, after making findings of fact, recommended that this Court deny Defendant's motion to suppress the statements he made to law enforcement in the driveway of his parents' residence ("the residence") on February 9, 2015, because those statements fell squarely within the public safety exception to the *Miranda* rule. *See generally* Dkt. No. 39. Pending before the Court are Defendant's objections to Magistrate Judge Baxter's recommendation. *See* Dkt. No. 42.

## II. DISCUSSION

### A.   Standard of review of a magistrate judge's recommendations

Rule 59(b)(1) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a] district judge may refer to a magistrate judge for recommendation a defendant's motion to . . . suppress evidence . . . . The magistrate judge must promptly conduct the required proceedings . . . [and] must enter on the record a recommendation for disposing of the matter, including any proposed findings of fact. . . ." Fed. R. Crim. P. 59(b)(1). Furthermore, "[w]ithin 14 days after being served with a copy of the recommended disposition, or at some other time the court sets, a party may serve and file specific written objections to the proposed findings and recommendations. . . ." Fed. R. Crim. P. 59(b)(2). Finally, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the

recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

### B.     Public safety exception to the *Miranda* rule

In *New York v. Quarles*, 467 U.S. 649 (1984), the Supreme Court identified a "narrow exception to the Miranda rule," when arresting officers ask a defendant "questions necessary to secure their own safety or the safety of the public[.]" *Id.* at 658-59. The public safety exception to *Miranda* does not depend on the questioning officer's subjective motivation. *See id.* at 655-56. Instead, this exception applies as long as the questioning "relate[s] to an objectively reasonable need to protect the police or the public from any immediate danger[.]" *Id.* at 659 n.8; *see also United States v. Reyes*, 353 F.3d 148, 152 (2d Cir. 2003) (reiterating that "*Miranda* warnings need not precede 'questions reasonably prompted by a concern for the public safety' or the safety of the arresting officers" (quoting [*Quarles*, 467 U.S.] at 656, 658-59, 104 S. Ct. 2626)).

Generally, Defendant objects to Magistrate Judge Baxter's conclusion that the public safety exception to the *Miranda* rule applies in the circumstances of this case. Defendant acknowledges that the facts are not in dispute. However, he takes issue with Magistrate Judge Baxter's "ultimate conclusion or inference that there was a question as to the condition of Jim Tan [Defendant's father]" based on his mother's 911 calls to the police. *See* Dkt. No. 42 at 1. Furthermore, he contends that "there was no need for law enforcement to inquire as to the whereabouts of the gun" because there were only three people at the residence when the police arrived; Defendant and his mother were immediately accounted for and quickly placed under police control; and Defendant's father was deceased in the residence. *See id.* at 1-2. Therefore, Defendant argues that neither he,

his mother, nor his father posed any risk to the safety of the officers. *See id.* at 2. In addition, Defendant takes issue with Magistrate Judge Baxter's reliance on *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004), and *United States v. Estrada*, 430 F.3d 606 (2d Cir. 2005), which he argues are factually distinguishable and do not warrant a finding that the public safety exception to the *Miranda* rule applies to the circumstances of this case. *See id.*

      Despite Defendant's arguments to the contrary, the information that the Deputy Sheriffs had when they arrived at the residence was not clear. Based on the information they had received from the dispatcher, they knew that a woman, who, they learned later, was Defendant's mother, had called 911, had a heavy accent, was difficult to understand, and was, at least during portions of the calls, hysterical. They also knew that there had been some kind of domestic incident, apparently involving Defendant and his father, that Defendant's mother had heard shots, and that there was a gun involved. Finally, they knew that Defendant's mother had refused to check on her husband because she was scared; but they were not aware of the reason for her fear.

      Without definitive or reliable information about the whereabouts and physical condition of Defendant's father and the whereabouts of the gun, the Court finds that the Deputy Sheriffs had a reasonable basis to believe that Defendant might have personal knowledge of critical information relating to an immediate threat to their safety, *i.e.,* the location of both the firearm and Defendant's father. In addition, because the Deputy Sheriffs had conflicting information about the physical condition of Defendant's father, the Court finds that the Deputy Sheriffs had an objectively reasonable basis to question Defendant about the status of his father to determine whether he was in need of urgent medical attention.

      Although Defendant tries to distinguish *Estrada* and *Newton* based on the facts of those

cases, they are not as dissimilar as Defendant would have the Court conclude. In fact, some of the circumstances that the Deputy Sheriffs faced in this case present a stronger argument than the facts in either of those cases for finding that the public safety exception to the *Miranda* rule applies. In *Newton*, for example, when the officers questioned the defendant, he was handcuffed; and there was nothing to indicate that the other three individuals in the apartment – the defendant's mother, her husband, and the defendant's girlfriend – were a threat to the officers' safety. Nonetheless, the Second Circuit concluded that "the presence of the three persons in the apartment in addition to [the defendant], the reported hostility among these individuals,[1] and the possibility that such hostility could turn against law enforcement officers combined to support an objective belief that even with [the defendant] handcuffed, the unlocated gun presented a deadly risk to everyone on the premises." *Newton*, 369 F.3d at 678 (footnote omitted).

Similarly, the defendant in *Estrada* was handcuffed when the officers asked him questions without first advising him of his *Miranda* rights. At the time that the officers questioned him, they knew that he had convictions for a misdemeanor and a felony assault, that he was a drug dealer, that he kept his drugs at his apartment, and that a woman was present in the apartment. *See Estrada*, 430 F.3d at 612-13. In light of these facts, the Second Circuit found that "[t]he officers had an objectively reasonable need to protect themselves from immediate danger" and "had ample reason to fear for their safety" because they had reason to believe that, based on his past history, the defendant was capable of violence; that, because he kept drugs at the apartment, he also kept a gun there; and, finally, because another person was present in the apartment. *See id.* at 613.

---

[1] The defendant's mother had reported that the defendant had threatened to kill her and her husband and that the defendant had a firearm in the apartment.

-5-

In this case, the Deputy Sheriffs knew that there were at least three people on the premises, one of whom, Defendant's father, was not accounted for. Furthermore, they had been informed that at least two of the individuals – Defendant and his father – had been involved in a domestic dispute that apparently involved a gun, the location of which was unknown. Finally, the Deputy Sheriffs did not have definitive knowledge about Defendant's father's condition – Was he seriously wounded? Was he dead? Did he have the gun with him and, if so, was he able to use it against them and the other individuals on the premises?

Moreover, the questions that the Deputy Sheriffs asked Defendant were reasonably prompted by a concern for their safety and to ascertain the physical condition of Defendant's father. In addition, the three questions they asked Defendant were related to these concerns: "Who else is in the house?" "Where is your father?" "Where is the gun?" Their questions were brief and to the point and were neither investigatory in nature nor designed solely to elicit testimonial evidence from Defendant. The fact that Defendant, in responding to their questions, provided non-responsive, incriminating information does not change the fact that the specific questions that the Deputy Sheriffs asked were limited in nature and based on an objectively reasonable concern for their safety, as well as a concern that Defendant's father was either a danger to them or that he was in critical need of medical intervention.

Therefore, for all these reasons, the Court concludes that the Deputy Sheriffs' questions to Plaintiff that are at issue fall within the public safety exception to the *Miranda* rule.

### III. CONCLUSION

Having reviewed the record *de novo* in light of Defendant's objections to Magistrate Judge Baxter's April 30, 2018 Report-Recommendation, the Court hereby

**ORDERS** that Magistrate Judge Baxter's recommendation, set forth in his April 30, 2018 Report-Recommendation, *see* Dkt. No. 39, is **ACCEPTED**; and the Court hereby

**ORDERS** that Defendant's motion to suppress the statements that he made to Deputy Sheriffs on February 9, 2015, in the driveway of the residence, *see* Dkt. No. 21 at 15-16, is **DENIED** because those statements fall squarely within the public safety exception to the *Miranda* rule.

**IT IS SO ORDERED.**

Dated: May 29, 2018
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge